EXHIBIT A

1  DAN STORMER, Esq., State Bar #101967
   MARY TANAGHO ROSS, Esq., State Bar #280657
2  HADSELL STORMER & RENICK, LLC
3  128 North Fair Oaks Ave., Suite 204
   Pasadena, California 91103
4  Telephone: (626) 585-9600
   Fax No.: (626) 577-7079
5

6  MARC COLEMAN, Esq., State Bar #110358
   LAW OFFICES OF MARC COLEMAN
7  211 East Ocean Boulevard, Suite 420
   Long Beach, California 90802
8  Telephone: (562) 432-8188
9  Fax No.: (562) 432-2935

10 Attorneys for Plaintiffs

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

APR 13 2017

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| ERIKA SEPULVEDA, FOR HERSELF AND ON BEHALF OF HER MINOR CHILDREN MELODY PATRICIO AND ERNESTO PATRICIO, AND MARIA CARMEN SARATE ANGELES<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WHITTIER, OFFICER HAUSE, OFFICER CABRAL, OFFICER MEDINA, DOLLAR FINANCIAL GROUP, INC., DFC GLOBAL CORP., DOLLAR FINANCIAL CORP., AND MONETARY MANAGEMENT OF CALIFORNIA, INC., JOSE LOPEZ, DON MORTON, and DOES 1-20, inclusive,<br><br>Defendants. | CASE NO. BC657729<br><br>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL<br><br>1. 42 U.S.C. §1983 – Deprivation of Liberty;<br>2. Violation of U.S. Constitution – Fourteenth Amendment;<br>3. Negligence; and<br>4. Intentional Infliction of Emotional Distress |

1

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs allege:

## INTRODUCTION

On November 19, 2015, the emotional and psychological fabric of four people was devastated by the neglect and complacency of police officers at the City of Whittier Police Department and senior employees at Dollar Financial Group. In this case a young mother, Erika Sepulveda, working as a store manager for Dollar Financial Group, was forced in the middle of the night, to attend to a crime scene at her Dollar Financial Group store with her mother and two young children in tow, and was abandoned there by officers of the Whittier Police Department and the District Manager and Risk Manager of Dollar Financial Group. Consequently, the perpetrators of the crime returned to the store and robbed Erika, her mother, and two children at gun point, threatening to kill everyone if Erika did not comply with the robbers' demands. The terror and trauma of that night is seared into their memories and has wreaked lasting psychological and emotional damage.

## PARTIES

1. Plaintiff Erika Sepulveda ("Sepulveda" or "Plaintiff") is an individual who at all relevant times herein was employed by Defendant Dollar Financial Group as defined in paragraph nine (9) below within this jurisdiction and a resident of the County of Los Angeles.

2. Sepulveda brings this lawsuit on her own behalf and on behalf of her minor children Melody Patricio and Ernesto Patricio.

3. Melody Patricio (born May 13, 2015) is the minor daughter of Erika Sepulveda who at all times resided in Los Angeles County.

4. Ernesto Patricio (born September 22, 2010) is the minor son of Erika Sepulveda who at all times relevant herein resided in Los Angeles County.

5. Plaintiff Maria Carmen Sarate Angeles ("Sarate") is the mother of Sepulveda and is a resident of the County of Los Angeles.

6. Defendant City of Whittier ("the City") was and is a legal political entity established under the laws of the State of California in the County of Los Angeles, with all powers specified and necessarily implied by the Constitution and the laws of the State of California and exercised by a duly elected City Council and/or their agents and officers. The City is responsible for the actions, inactions, policies, procedures, practices and customs of the Whittier Police Department ("WPD") and its agents and employees. At all relevant times, the City was and continues to be responsible for ensuring that the

actions of the WPD and its agents and employees comply with the Constitutions of the State of California and of the United States and any other applicable laws and regulations.

7. Defendant Officer Hause ("Hause"), at all times relevant herein, was a sworn Police Officer employed by the City through the WPD.

8. Defendant Officer Medina ("Medina") at all times relevant herein, was a sworn Police Officer employed by the City through the WPD.

9. Defendant Officer Cabral ("Cabral"), at all relevant times herein, was a sworn Police Officer employed by the City through the WPD.

10. Defendant Monetary Management of California, Inc., was a California corporation which along with Co-Defendant Dollar Financial Group, Inc., DFC Global Corp., and Dollar Financial Corp. and DOES 11-15 (collectively "Dollar Financial Group") employed Sepulveda, Lopez, Morton and DOES 16-20 whose place of business and work location where the acts and omissions alleged herein occurred included 8806 Painter Avenue, Suite 4, Whittier, California 90602.

11. Defendant Jose Lopez ("Lopez") is and at all relevant times was the District Manager for Dollar Financial Group who was responsible for the business and work location where the acts and omissions alleged herein occurred. Plaintiffs are informed and believe and thereupon allege that, in committing the acts alleged herein, Lopez acted both within the course and scope of his employment and agency for Defendant Dollar Financial Group, as District Manager, and outside the course and scope of his employment and agency in his individual capacity.

12. Defendant Don Morton ("Morton") is and at all relevant times was a Loss Prevention agent for Dollar Financial Group. Plaintiffs are informed and believe and thereupon allege that, in committing the acts alleged herein, Morton acted both within the course and scope of his employment and agency for Defendant Dollar Financial Group as a Loss Prevention agent, and outside the course and scope of his employment and agency in his individual capacity.

13. The true names and/or capacities, whether corporate, associate, individual or otherwise of Defendants DOES 1 through 20, inclusive, are unknown to plaintiff at this time. Plaintiffs, therefore, sues said Defendants by such fictitious names. Plaintiffs will seek leave of Court to amend with the true names and/or capacities of such fictitiously named Defendants when the same are ascertained. Plaintiffs allege that each of the Defendants fictitiously named as a "DOE" is legally responsible for the events and occurrences herein alleged, and proximately thereby caused all damages and injuries to

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

plaintiffs as described in this complaint.

14. Plaintiffs are informed and believe, and thereupon allege, that at all times material herein, each of the Defendants was an agent or employee of, and/or working in concert with, his/her Co-Defendants and acting within the course and scope of such agency, employment and/or concerted activity. Plaintiffs allege that to the extent certain acts and omissions were perpetrated by certain Defendants, the remaining Defendant or Defendants confirmed and ratified said acts and omissions.

15. Wherever reference is made in this Complaint to any act or failure to act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly and severally.

## GENERAL ALLEGATIONS

16. Sepulveda was an employee of Dollar Financial Group, working as a Store Manager, since February of 2011.

17. In July of 2013, Sepulveda became the Store Manager of a Dollar Financial Group store at 8806 Painter Avenue, Suite 4, Whittier, California ("the Whittier store").

18. Under the terms of a contract for employment, Sepulveda was paid $15.71 per hour and she worked forty hours per week.

19. Sepulveda typically worked until 5:00 PM, except on nights that she was responsible for closing the store. But on those nights, she worked no later than 9:30 PM. She was never required to be at the store later than that.

20. On November 19, 2015, at approximately 3 AM, Sepulveda received a call from Tyco Alarm Company informing her that a burglar sensor had been activated at the Whittier store. Sepulveda told Tyco Alarm Company to dispatch the police to the store. Sepulveda was told by Tyco Alarm Company that someone needed to come to the store to disarm the alarm.

21. At or about 3:04 AM on November 19, 2015, police officers from the WPD including Defendants Hause, Medina and Cabral and DOES 1-10 responded to the burglary alarm and arrived at the Whittier store.

22. Sepulveda called Lopez at about 3:12 a.m., and advised him by text and/or voicemail that the burglary alarm had gone off. It was the job of the District Managers including Lopez to attend to such emergencies. Lopez did not answer the phone or respond to the text or voicemail until approximately 4:45 a.m.

23. Because Lopez did not respond to the emergency, Sepulveda as Store Manager, was required to go to the Whittier store. Sepulveda did not want to leave her young children and her mother alone in the neighborhood in which they lived at that hour, so Sepulveda, Sarate and Melody and Ernesto Patricio all got into Sepulveda's car and drove to the store location. It took approximately an hour to travel to at the Whittier store.

24. When Sepulveda arrived, she encountered four police officers with WPD, Hause, Medina and Cabral and one other. Sepulveda entered the store with two of the police officers and observed the crime scene. Glass was littered everywhere. The large glass front window, front door, and counters were all shot with a firearm and shattered. There was loose change on the floor, a large safe was flipped over onto its side and the alarm key pad to the store was broken. The store was a mess of glass debris and completely unsecure.

25. Officer Hause and/or other WPD officers directed Sarate and Melody and Ernesto Patricio to leave their secure car and relocate inside the unsecured Whittier store, which they did because the officers told them to do so. Officer Hause and/or other WPD officers told Plaintiffs they would be safe inside the store.

26. After taking photographs and transcribing information for the police report, Officer Hause told Sepulveda that the WPD officers were leaving. Officer Hause handed Sepulveda reference information in order to obtain the police report. Incredulous, Sepulveda questioned the officers as to how they could just leave her there. Officer Hause told Sepulveda that the perpetrators of the burglary were "scared" and would not return. Sepulveda was told by the WPD officers to remain in the store.

27. At approximately 5:10 AM, while it was still dark, all of the WPD officers at the scene left. Sepulveda, Sarate and Melody and Ernesto Patricio were alone at the store.

28. Sepulveda, again, attempted to contact her District Manager Lopez and, this time, she was successful. Lopez told Sepulveda that he had heard his phone on the previous attempt to make contact, but he ignored it. Sepulveda described the entire scene and situation to Lopez, whose duty it was to be present at the store location in the aftermath of criminal activity. When Sepulveda asked Lopez to do his job and come to the store, Lopez told Sepulveda that he would not come because he had to appear in court later in the morning.

29. Lopez did not come to the store to ensure Sepulveda's safety and assist in securing the

1 location. Lopez, instead, told Sepulveda to remain at the store and take photographs.

2   30.   Prior to the perpetrators returning to the Whittier store, Morton talked with Sepulveda. Morton had viewed the surveillance video and relayed to Sepulveda that the crime was perpetrated by four men who had committed the crime with the lights in the store off. Morton was viewing feeds from the surveillance cameras live, or could have viewed them live, while Sepulveda remained in the unsecured store, with her family. Morton did not give any instructions to Sepulveda nor did he offer any assistance.

   31.   At some point after 5:10 AM, four African-American men, wearing dark, baggy clothing entered the store. All four men pulled out handguns and pointed them at Sepulveda and Sarate. The men told Sepulveda that everyone would be killed unless she opened the safe so the men could retrieve its contents. Sepulveda went to the large safe that previously had been flipped over but she was unable to open it due to a timed lock. Sepulveda pled with the men not to kill her or her family. She told the men that it was impossible for her to open that safe. Subsequently, Sepulveda offered to attempt to open a different safe. Sepulveda was successfully able to open the safe and the men took the $8,000 and gold that was inside it. The men wanted to take Sepulveda's cellphone as well, but she successfully pleaded with them to let her keep it. The four men left.

   32.   Sepulveda used her cellphone to call 911 and report the robbery.

   33.   At approximately 5:46 AM, WPD officers arrive to the scene. The officers told Sepulveda that the District Manager would be arriving shortly. Sepulveda was interviewed by the officers and a police report was generated.

   34.   Shortly after the officers' arrival, Lopez arrived at the scene. He asked how much and what was stolen. Lopez, again, called Morton.

   35.   At approximately 5:55 AM, Morton called and stated that the entire incident was caught on video, including the suspects fleeing in a van.

   36.   Sepulveda left the store at approximately 9:00 AM.

   37.   Since being abandoned, robbed, held hostage and threatened with murder at the Whittier store, Sepulveda, Sarate and Melody and Ernesto Patricio have suffered devastating and continuous mental and emotional injuries. They all suffer from depression, anxiety and, particularly, post-traumatic stress disorder, requiring absence from work, difficulty with daily life and significant medical attention and therapy. Sepulveda has lost wages due to being disabled from working due to the trauma.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

# FIRST CAUSE OF ACTION

## 42 U.S.C. § 1983

(Fourteenth Amendment: Denial of Substantive Due Process Right to Liberty)

(By Plaintiffs Sepulveda, Sarate, and Melody and Ernesto Patricio against the City of Whittier and Officers Hause, Cabral and Medina and DOES 1-10)

38. Plaintiffs incorporate by reference each and every allegation contained ¶¶ 1-37 above as though fully set forth herein.

39. All of the acts of Defendants and the persons involved were done under color of state law.

40. The acts and omissions of the individual Defendants deprived Sepulveda, Sarate, Melody and Ernesto Patricio of rights, privileges, and immunities secured by the United States Constitution and laws of the United States by, among other things, depriving Plaintiffs of their right to liberty without due process. WPD officers placed Plaintiffs in danger, and deliberately disregarded all the risks inherent to that situation, thereby allowing Plaintiffs to be subjected to an armed robbery and threats on their life. Officer Hause, in particular, callously and recklessly instructed Plaintiffs Sarate, Melody and Ernesto Patricio to leave their secure car, and instructed Plaintiffs to remain in the unsecured store; he knew or recklessly disregarded the danger he was placing Plaintiffs in.

41. As a direct and proximate result of the aforementioned acts of Defendants, Plaintiffs sustained and incurred general damages, including severe emotional distress and pain and suffering, and special damages, including loss of income, in an amount in accordance with proof.

42. In doing the foregoing wrongful acts, Defendants acted in reckless and callous disregard for the constitutional rights of Plaintiffs. The wrongful acts were willful, oppressive, fraudulent and malicious, thus warranting the award of punitive damages against the individual Defendants (but not the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct. This is due to the egregious indifference to human life demonstrated by the police officers involved in this case, amounting to willful misconduct, the result of which could have easily cost the Plaintiffs their lives. It is important, as a matter of public policy, to deter such misconduct in the future and, therefore, punitive damages are justified.

43. The individual Defendants acted pursuant to expressly adopted official policies, practices or customs of the City of Whittier. These include policies, practices, procedures or customs on how to

secure a crime scene, how and when to leave a crime scene and how to handle the victims of a crime.

44. In addition, the training policies of the City of Whittier were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including but not limited to securing and leaving a crime scene. The City of Whittier knew that its failure to adequately train its officers to secure crime scenes and ensure the safety of victims present made it highly predictable that its officers would engage in conduct that would deprive persons such as Plaintiffs of their rights. The City of Whittier was thus deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

## SECOND CAUSE OF ACTION

**Violation of United States Constitution – Fourteenth Amendment – Deprivation of Liberty**

**(By Plaintiffs Sepulveda, Sarate, and Melody and Ernesto Patricio against the City of Whittier and Officers Hause, Cabral, Medina and DOES 1-10)**

45. Plaintiff Sepulveda, Sarate and Melody and Ernesto Patricio re-allege and incorporate by reference each and every allegation contained in ¶¶ 1-37 though fully set forth herein.

46. All of the acts of Defendants and the persons involved were done under color of state law.

47. The acts and omissions of the individual Defendants deprived Sepulveda, Sarate, and Melody and Ernesto Patricio of rights, privileges, and immunities secured by the Constitution and laws of the United States Constitution by, among other things, depriving Plaintiffs of their right to liberty without due process. WPD officers placed Plaintiffs in danger, and deliberately disregarded all the risks inherent to that situation, thereby allowing Plaintiffs to be subjected to an armed robbery and threats on their life. Officer Hause, in particular, callously and recklessly instructed Plaintiffs to remain in the unsecured store, knowing or recklessly disregarding the danger the situation presented.

48. As a direct and proximate result of the aforementioned acts of Defendants, Plaintiffs sustained and incurred general damages, including severe emotional distress and pain and suffering, and special damages, including loss of income (as to Sepulveda), in an amount according to proof.

49. In doing the foregoing wrongful acts, Defendants acted in reckless and callous disregard for the constitutional rights of Plaintiffs. The wrongful acts were willful, oppressive, fraudulent and malicious, thus warranting the award of punitive damages against the individual Defendants (but not the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct. This is

due to the egregious indifference to human life demonstrated by the police officers involved in this case, amounting to willful misconduct, the result of which could have easily cost the Plaintiffs their lives. It is important, as a matter of public policy, to deter such misconduct in the future and, therefore, punitive damages are justified.

50. The individual Defendants acted pursuant to expressly adopted official policies, practices or customs of the City of Whittier. These include policies, practices, procedures or customs on how to secure a crime scene, how to leave a crime scene and how to handle the victims of a crime.

51. In addition, the training policies of the City of Whittier were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including but not limited to securing and leaving a crime scene. The City of Whittier knew that its failure to adequately train its officers to secure crime scenes and ensure the safety of victims present made it highly predictable that its officers would engage in conduct that would deprive persons such as Plaintiffs of their rights. The City of Whittier was thus deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

### THIRD CAUSE OF ACTION

### Negligence

(By Plaintiffs Sepulveda, Sarate, and Melody and Ernesto Patricio against Dollar Financial Group, Lopez and Morton and DOES 11-20)

52. Plaintiffs hereby repeat and incorporate herein by reference and re-allege ¶1 through 37 above as though fully set forth.

53. At all times mentioned herein, defendants and each of them, owed to plaintiff and the class of employees of which plaintiff was a member, a duty of due care that said plaintiff would not be deprived of liberty and subjected to grave danger through the negligence of defendants. As such, at all times herein mentioned, this duty of due care required defendants to respond to criminal acts against its business, ensure that its managers performed its duties commensurate with those acts against its business and not force an employee, plaintiff and her family as foreseeably material, to compensate for failures to adhere to those duties by placing her and them in a dangerous situation completely outside the normal risk of employment. Furthermore, this duty of care required defendants, Dollar Financial Group, to exercise reasonable care and caution in selecting, hiring, training and supervising their managerial and administrative employees to ensure plaintiff's right to be free from dangerous situations outside the

normal risk of employment. It was defendant Dollar Financial Group's obligation to ensure that its managerial employees, specifically including Lopez, Morton and the DOES 16-20, to perform their functions and duties in a competent matter and not violate plaintiff's rights as alleged herein. Those same duties were owed to plaintiffs when, with defendants' knowledge, Sepulveda was forced to bring them into that dangerous situation for the benefit of her employer, due to the negligence of defendants.

54. At all times mentioned herein, defendant Dollar Financial Group breached its duty to Plaintiffs in the following particulars which are here alleged as examples only and are not dispositive of the facts plaintiff will prove at trial: defendant Dollar Financial Group failed to adequately investigate, hire, train, supervise, correct and/or otherwise control the conduct of its administrators and managers as alleged herein and otherwise authorized and ratified the conduct of said managers and administrators, specifically Lopez and Morton and DOES 16-20 who completely failed to perform the duties of competent employees in his position, respectively. Consequently, Sepulveda was placed in a position of danger well beyond the normal risk of her employment, forced to bring her family into a dangerous situation, and perform duties and assume risks, which were properly defendants to bear. Defendants foreseeably knew or should have known Sepulveda's family would be there, due to defendants' negligence and defendant Dollar Financial Group breached its duty of care to those plaintiffs. Defendant Dollar Financial Group is vicariously liable for the negligent acts of its employees.

55. The above-said acts of defendants named in this cause of action constitute negligence in the hiring, retention, supervision and control of Dollar Financial Group's managers, administrators and supervisors and negligence by all named Defendants in the acts and failures to act as alleged, thereby placing plaintiffs in grave danger. Said negligent conduct was a substantial factor in causing injury and damage to plaintiffs.

56. As a direct and proximate result of the before mentioned acts of Defendants, Plaintiffs sustained and incurred general damages including severe emotional distress and Plaintiffs suffering and special damages including loss of income (as to Sepulveda) in an amount according to proof.

### FOURTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
(By Plaintiffs Sepulveda, Sarate, and Melody and Ernesto Patricio against Dollar Financial Group, Lopez, Morton and DOES 11-20)

57. Plaintiff hereby repeats and incorporates herein by reference and re-alleges ¶1 through 37

above and incorporates them here by reference as though fully set forth.

58. In doing or not doing the acts as herein alleged Defendants conduct was extreme and outrageous.

59. Defendants acted with reckless disregard of the probability that Sepulveda, Sarate and Melody and Ernesto Patricio would suffer emotional distress, knowing that Sepulveda and her family would have to be present and remain at a dangerous crime scene in the dead of night.

60. Plaintiffs Sepulveda, Sarate and Melody and Ernesto Patricio did in fact suffer severe emotional distress as a direct result of their experience as herein alleged.

61. Defendants' conduct was a substantial factor in causing Plaintiffs severe emotional distress.

62. As a direct and proximate result of the before mentioned acts of Defendants, Plaintiffs sustained and incurred general damages including severe emotional distress and pain and suffering and special damages including loss of income (as to Sepulveda) in an amount according to proof.

63. In doing the foregoing wrongful acts, Defendants acted with reckless and callous disregard for the welfare of Plaintiffs. The wrongful acts were willful, oppressive, fraudent and malicious, thus warranting the award of punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter misconduct.

WHEREFORE, plaintiffs pray for judgment against the defendants and each of them as follows:

1. <u>All Causes of Action</u>: For compensatory, general and special damages against each Defendant, jointly and severally, amounts to be proven at trial.
2. <u>First and Second Cause of Action</u>: For punitive damages against the individual defendants only.
3. Fourth Cause of Action: For punitive damages against Defendants and each of them;
4. <u>All Causes of Action</u>: For costs of suit herein and reasonable attorneys' fees and costs as authorized by statute or law.
5. <u>All Causes of Action</u>: For prejudgment interest according to all relevant provisions of law, including but not limited to California Code of Civil Procedure §3291.

///
///

6. <u>All Causes of Action:</u> For such other and further relief, including injunctive or declatory relief, as the Court deems just and proper.

Dated: April 12, 2017

Respectfully submitted,

LAW OFFICES OF MARC COLEMAN

HADSELL STORMER & RENICK, LLC

By _____

Marc Coleman
Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial before a jury on all issues raised in their Complaint.

Dated: April 12, 2017

Respectfully submitted,

LAW OFICES OF MARC COLEMAN

HADSELL STORMER & RENICK, LLC

By _____

Marc Coleman
Attorney for Plaintiffs

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL